ROBINSON v. HILLMAN.

EJECTMENT; WILLS; PARTY WALLS.

1. The plaintiff in ejectment need not show title from the sovereignty of the soil, where the parties claim under a common source of title; or where the plaintiff has title by adverse possession; or where defendant is a mere trespasser.

2. A devise of land to the testator's daughters, followed by a provision that the land shall be sold to pay legacies unless the daughters themselves shall pay the legacies, passes the title of the land to the daughters, subject to the charge of the payment of the legacies.

3. Every wall that may be constructed on land by an adjoining owner to serve his own purposes is not necessarily a party wall; but to be a party wall it must be such a wall as will satisfy the reason and purpose for which the municipal regulation relating to such walls was devised. (Following *Smoot* v. *Heyl*, 34 App. D. C. 480.)

4. If a wall answers the ordinary requirements of a party wall, the right to erect it in part upon an adjoining lot cannot be made to depend upon the intention or ability of the owner of the lot encroached upon to make use of it at the time.

5. The fact that the owner of a lot containing a dwelling house will not. so long as the house exists, have occasion to use a wall erected as a party wall partly on his own lot, will not render the wall an unlawful encroachment; but if constructed according to the building regulations, it will be held to be a party wall.

6. In ejectment to recover land encroached upon by an alleged party wall, evidence by the defendant of the value of the wall on the plaintiff's lot is inadmissible when offered on the theory that a party has the right under sec. 1003, D. C. Code (31 Stat. at L. 1349, chap. 854), to recover the value of improvements erected by him on

land entered under a title believed to be good. (Citing *Smoot* v. *Heyl*, supra.)

7. Under secs. 993 and 1000, D. C. Code, the plaintiff in ejectment may recover less land than he sues for.

8. Where a defendant in ejectment claims only a portion of the land sued for, he may disclaim as to the other part. (Following *Crandall* v. *Lynch*, 20 App. D. C. 73.)

No. 2241. Submitted February 9, 1911. Decided March 6, 1911.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the Court, in an action of ejectment. *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment in an action of ejectment.

The declaration of the plaintiffs, Myra T. Hillman and Elizabeth Clement, claimed possession of a strip of land, part of lots 12 and 13 in reservation 11 in the city of Washington, 4.81 feet wide and 16.67 feet long.

Plaintiffs claimed title as devisees of Ann B. Hillman, "the assignee of the entire interest of Lizzie Clement, who was the assignee of the entire interest of Seth Hillman, who was the assignee of the entire interest of Edward Wools, to whom said property was leased by Hugh Gelston, on July 20th, 1868, for a period of ninety-nine years, renewable forever." Defendants, Dora F. Robinson and C. Barnwell Robinson, entered a plea of not guilty. It appears that reservation 11 was originally divided into lots 12 and 13, fronting together, 50 feet on 3d street, and running back 150 feet to a public alley 35 feet wide. The two lots were further subdivided into three parcels 16 feet 8 inches wide, numbered 225, 227, and 229, running back 100 feet, leaving the eastern 50 feet in one parcel, which afterwards was designated as lot 36. The strip in controversy is part of a parcel, or lot 227. Dwelling houses occupy said lots 225, 227, and 229.

Plaintiffs offered the following evidence of title: (1) A cer-

tificate of the commissioners appointed under an ordinance of the city of Washington, passed May 22, 1822, to the effect that at a public sale made July 9, 1822, Robert Keyworth had purchased lot 12, in reservation 11, upon certain conditions, together with an assignment by Keyworth of his interest therein to Hugh Gelston. (2) A similar certificate to Keyworth on July 10, 1822, applied to lot 13, also assigned to Gelston. (3) A lease from Hugh Gelston to Edward Wools, dated July 20th, 1868, for the term of ninety-nine years, with a covenant for renewal of said lease forever, demising the western 100 feet of said lots 12 and 13, describing the same by their subdivisions. (4) Assignment of said lease by Wools to Seth Hillman, in consideration of $4,000, of said center lot 227, dated September 27, 1869. (5) Assignment of lease by Seth Hillman to Lizzie Clement of said lot 227, in consideration of $2,000, dated July 21, 1870. (6) Assignment of lease from Lizzie Clement to Ann B. Hillman, in consideration of $1,000, dated August 1, 1870. (7) Will of Ann B. Hillman, dated June 27th, 1909. Elizabeth Clement and Myra T. Hillman were named executors. Item 1 gives all of her estate to said executors, "in trust to sell and convey in fee simple in their discretion." Item 3 devises to her said daughters, Elizabeth Clement and Myra Hillman, the brick house known as No. 227. ("on the condition hereinafter provided"), together "with all the rest and residue of my estate, including my household and other personal effects of every kind and description wheresoever found, which I may be possessed of at my death, to have and to hold the same for their sole use and benefit, to be equally divided between them." Item 4 gives $300 to her son Richard; and Item 5, $100 to her son Townshend. Item 6 provides that in order to provide a fund for the payment of the legacies aforesaid, the house No. 227 shall be sold at public or private sale within two years after testatrix's decease. After paying said legacies, the proceeds of sale shall be equally divided between said daughters. Item 7 reads as follows: "It is my wish and desire, however, that my two daughters shall keep and occupy the said house as a place of residence as long as it may be convenient and agreeable for

them to do so, and if my said daughters shall choose to pay to my two sons the legacies hereinbefore provided for out of their private funds (the receipt of which by my sons shall be considered as full settlement of all their claims against my said estate), then the sale as hereinbefore provided for need not be made until such time as my said daughters may elect,—the entire proceeds of which, when sale is so made, shall then be equally divided between my two daughters." (Defendants objected to the introduction of said instruments, stating no ground of objection. Objections were overruled, and exception taken.)

(8) Elizabeth Clement testified that she and Myra T. Hillman were daughters of Ann B. Hillman, testatrix, who died November 13th, 1902. Witness was the stepdaughter of Seth Hillman. Ann B. Hillman lived in the house from 1869 until her death. Witness and sister have lived in it since 1869. The legacies to the two sons of Ann B. Hillman were paid by witness. C. Barnwell Robinson, called by plaintiffs, testified that he built a house on lot 36, in 1908, the western wall of which extended 9 inches beyond his line. At the rear of the houses 225, 227, and 229 are wood sheds. Between those sheds and his western wall is a passageway 4 feet wide, which was left for exit from the rear of those houses to the alley on the north.

Defendants introduced the following evidence: (1) That Florence B. Gelston, by virtue of the will of Hugh Gelston and conveyances, became the owner in fee of the parts of lots 12 and 13, known now as lot 36, and conveyed the same to Dora F. Robinson by deed dated December 31, 1898. (2) Sections 1, 28, 55, 62, 63, and 74 of the building regulations of the District of Columbia relating to party walls. (3) A permit to Dora F. Robinson to erect on lot 36, a four-story brick building,—height 60 feet. And evidence by a district building inspector that the western wall was 9 inches over the division line, being one half of the width of the wall. An architect and engineer, Sunderland, testified that he made the plans and superintended the construction of the building, and that he had computed the value of that part of the wall extending over the

line of lot 227. Upon objection of the plaintiffs, the court excluded the evidence of value. In connection therewith defendants read a notice served upon plaintiffs to the effect that, in case of a verdict in favor of plaintiffs, defendants would claim the benefit of improvements placed by them upon the property in question.

Upon conclusion of the evidence, the court, on motion of the plaintiffs, directed the jury to return a verdict for the plaintiffs. Upon this verdict a judgment was rendered, from which defendants have prosecuted this appeal.

*Mr. Lorenzo A. Bailey, Mr. George A. Prevost,* and *Mr. John Ridout* for the appellants.

*Mr. Eugene A. Jones* and *Mr. Charles F. Carusi* for the appellees.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. The first assignment of error, in proper order, is that founded on the exception taken to the plaintiffs' evidence of title.

As to the sufficiency of the instruments to show title from the sovereignty of the soil, we need not inquire for two reasons. (1) The evidence introduced by the defendants to prove title showed that Hugh Gelston was the common source of title. (2) Aside from this, the evidence of plaintiffs, in addition, showed that they and their devisor had been in open, undisturbed adverse possession of the premises, including the strip in controversy, for about forty years, under claim of title. Moreover, unless defendants had the right to enter and construct a party wall, they were mere trespassers. The effect of the third item of the will of Ann B. Hillman was to pass to the plaintiffs the fee simple title to lot 227, subject to the charge of the payment of the legacies to her two sons. The evidence shows that this charge had been satisfied without sale

of the premises, and the title was unaffected by the provisions of Item 7, relating to sale.

2. It appears that defendants entered upon the plaintiffs' lot, not under any claim of title to a part thereof, but for the purpose of constructing one half of the wall of their building thereon.

They claim that the wall is a party wall, and that they had the right to construct one half of it on plaintiffs' adjoining land, under authority conferred by the building regulations.

These regulations, the validity of which has not been disputed, provide that the owner of a lot, desiring to build thereon, shall have the right to erect one half of his wall upon the adjoining lot of another,—in no case exceeding 9 inches. The adjoining owner shall have the right to use said wall, or any part thereof, but before doing so, he shall pay the value of the part so used. Assuming the right to enter upon plaintiffs' lot for the erection of this wall as a party wall, the defendants applied for and obtained the usual building permit, and erected the wall in compliance therewith.

It is settled that every wall that may be constructed by the adjoining owner in serving his own ends is not necessarily a party wall, within the meaning of the regulations. It must be such a wall as will satisfy the reason and purpose for which the regulation was devised. *Smoot* v. *Heyl,* 34 App. D. C. 480. On the other hand, if the wall answer the ordinary requirements of a party wall, the right to erect it in part upon the adjoining lot cannot be made to depend upon the intention or ability of the owner of the lot encroached upon to make use of it at the time. Vacant land may be encroached upon for the purpose. The regulations are intended to serve a good purpose, and necessarily contemplate future growth, and probable changes in the uses of property. If the owner of the land does not make use of the party wall, he does not have to pay for any part of it. Notwithstanding the fact that plaintiffs' lot is now occupied by a dwelling house, and that so long as used as such there can be no occasion to avail of the right to half of defendants' wall, still we are of the opinion that the wall

may be upheld as a party wall, if it be reasonably and properly susceptible of such use. The wall seems to have been constructed in accordance with the regulations, looking to stability, safety, etc., and there is no evidence to show that it cannot be availed of as a party wall, should plaintiffs hereafter desire to make use of it as such. Under these conditions, we think it was error to direct a verdict for the plaintiffs.

3. There was no error in excluding evidence of the value of the half of the wall that was on plaintiffs' lot. If the defendants had no right to construct the wall as a party wall, for which purpose they entered, they clearly cannot claim the benefit of sec. 1003 of the Code [31 Stat. at L. 1349, chap. 854], which is limited to those who enter into possession of the premises under a title which they "had reason to believe, and did believe, to be good," and erect valuable and permanent improvements in good faith. Moreover, if the wall be not such as to constitute an available and legal party wall, it would be absurd to say that it nevertheless constitutes a valuable and permanent improvement. If not a party wall, it is an encumbrance or a nuisance. *Smoot* v. *Heyl,* supra.

4. We do not understand, under the circumstances, why plaintiffs should have sued for more land than is occupied by the defendants' wall, but that is no hindrance to the recovery of a less portion than the whole sued for. Code secs. 993 and 1000. The defendants under their claim of the right to erect a party wall might well have disclaimed as to any part of the land sued for that was not occupied by the wall. *Crandall* v. *Lynch,* 20 App. D. C. 73–82.

For the reasons hereinabove given, the judgment will be reversed, with costs, and the cause remanded for another trial.

                                                        *Reversed.*


A petition for a rehearing was denied.